STATE *vs.* HARRY SETTLE.

DECEMBER 21, 1959.

196

FROST, J. This is an indictment charging the defendant with selling to a person under the age of eighteen years a certain book which is obscene, lewd, lascivious and indecent. The case is before us under the provisions of general laws 1956, §9-24-27, on a certification by the superior

court wherein the following questions involving the constitutionality of §11-31-10 have been raised.

"Is Title 11, Chapter 31, Section 10, of the General Laws of Rhode Island, 1956, unconstitutional because it abridges the rights of the defendant to due process of law, freedom of speech, and freedom of the press, contrary to Section 1, Article 14 and Article 1, of the amendments to the constitution of the United States.

"Is Title 11, Chapter 31, Section 10, of the General Laws of Rhode Island, 1956, unconstitutional because it abridges the rights of the defendant to due process of law, freedom of speech, freedom of the press, and the right not to be deprived of life, liberty, or property, unless by the judgment of his peers or the law of the land, contrary to Article 1, Section 10 and 20 of the constitution of the State of Rhode Island."

Prior to the hearing before us the Rhode Island Affiliate American Civil Liberties Union sought and obtained our permission to file a brief as amicus curiae and its counsel also participated in the oral arguments.

General laws 1956, §11-31-10, reads as follows:

"Every person who shall wilfully or knowingly sell, lend, give away, show, advertise for sale or distribute commercially to any person under the age of eighteen (18) years or has in his possession with intent to give, lend, show, sell, distribute commercially, or otherwise offer for sale or commercial distribution to any individual under the age of eighteen (18) years any pornographic motion picture, or any still picture or photograph or any book, pocket book, pamphlet or magazine the cover or content of which exploits, is devoted to, or is principally made up of descriptions of illicit sex or sexual immorality or which is obscene, lewd, lascivious, or indecent, or which consists of pictures of nude or partially denuded figures posed or presented in a manner to provoke or arouse lust or passion or to exploit sex, lust or perversion for commercial gain or any article or instrument of indecent or immoral use shall, upon conviction, be punished by a fine of not less than one hundred dollars ($100) nor more than one thou-

sand dollars ($1,000) or by imprisonment for not more than two (2) years, or by both such fine and imprisonment.

"For the purposes of this section 'knowingly' shall mean having knowledge of the character and content of the publication or failure to exercise reasonable inspection which would disclose the content and character of the same."

Those claiming the statute to be unconstitutional assert as reasons therefor that the wording is vague and indefinite; that it is so broad in its definitions as to encompass acts or words which are included in the constitutional freedoms of the first amendment and are protected from state interference by the fourteenth amendment; that the penalty clause in the statute makes it punishable as a misdemeanor or a felony; and that the indictment does not contain the name of the book and therefore is fatally defective. We shall consider the first two objections together.

The purpose of the statute is clear. It is for the protection of youth and to combat juvenile delinquency. The subject matter includes pictures, books, pamphlets and magazines of a certain type, namely, those which exploit or are principally made up of descriptions of illicit sex or sexual immorality or which are obscene, lewd, lascivious or indecent. Specifically the section is designed to prevent such publications from passing into the hands of boys and girls of an impressionable age and is directed against those who are dealing in such publications as a business. This is clear from the preamble of the statute when it was passed and from the language of the statute itself. The present statute, §11-31-10, is a section of public laws 1956, chapter 3686, approved April 9, 1956, which was in amendment of and in addition to G. L. 1938, chap. 610, and became sec. 48 of that chapter. The preamble of P. L. 1956, chap. 3686, reads as follows:

"It is hereby declared that the publication, sale and distribution to minors of comic books devoted to crime,

sex, horror, terror, brutality and violence, and of pocket books, photographs, pamphlets, magazines and pornographic films devoted to the presentation and exploitation of illicit sex, lust, passion, depravity, violence, brutality, nudity and immorality are a contributing factor to juvenile crime, a basic factor in impairing the ethical and moral development of our youth and a clear and present danger to the people of the state. Therefore, the provisions hereinafter prescribed are enacted and their necessity in the public interest is hereby declared as a matter of legislative determination."

The title of §11-31-10 is "Sale or exhibition to minors of indecent publications, pictures, or articles." The word "commercially" not only modifies the word "distribute" but it modifies each one of the preceding words, "sell," "lend," "give away," "show," and "advertise for sale." It is obvious from a reading of the statute that it is not directed against and does not embrace the father who gives to a youthful member of his family a book which comes under the ban of the law. The statute by its own terms is directed against those who, directly or indirectly for pecuniary gain, are possessing and handling publications of the sort described.

Counsel who oppose the views of the state contend that the statute is so vague and indefinite as to be unconstitutional; that in addition to proscribing any book the cover or content of which is obscene, lewd, lascivious or indecent, the statute goes on to condemn in the alternative any book the cover or content of which exploits, is devoted to or is principally made up of descriptions of illicit sex or sexual immorality, or which consists of pictures of nude or partially denuded figures posed or presented in a manner to provoke or arouse lust or passion, or to exploit sex, lust; or perversion for commercial gain. We fail to see that the addition of the alternatives introduces into the statute any element of vagueness or uncertainty. Obscenity is not with-

in the area of constitutionally protected speech or press. *Roth* v. *United States,* 354 U. S. 476. Lewd, lascivious and indecent are but synonyms of obscene. *Swearingen* v. *United States,* 161 U. S. 446. The alternatives mentioned are nothing more than examples of what is obscene, lewd, lascivious and indecent and are to a degree explanatory of the words used earlier.

. Opponents of the state's views rely on *Winters* v. *New York,* 333 U. S. 507. Winters was a bookdealer in the city of New York who was convicted of having in his possession certain magazines with intent to sell them. Conviction was affirmed by the Appellate Division of the Supreme Court and later by the Court of Appeals. There was an appeal to the Supreme Court of the United States. The pertinent part of the New York Penal Law §1141 reads, "A person * * * who * * * has in his possession with intent to sell * * * any book, pamphlet, magazine, newspaper or other printed paper devoted to the publication, and principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime * * *."

The court stated at page 519, "we find the specification of publications, prohibited from distribution, too uncertain and indefinite to justify the conviction of this petitioner." Because the statute was in violation of the fourteenth amendment to the constitution of the United States, the conviction was reversed. The statute in the *Winters* case in the breadth of its language condemned the publication of what could be and frequently is considered to be legitimate news. We do not find in the instant statute such reasonable ground for uncertainty as to cause a person to be in doubt as to whether a particular book or article is included within the language of the statute.

. The defendant also cites *State* v. *Pocras,* 166 Neb. 642. Pocras, a newsdealer in the city of Lincoln, was convicted under an ordinance which read, "It shall be unlawful * * *

to sell or offer for sale, or dispose of in any manner, any obscene, lewd, or indecent book, picture, or other publication or thing." A majority of the court held that the words "dispose of in any manner" made the ordinance void for uncertainty. There is no similarly broad language in the instant statute which could make for uncertainty.

Another case relied upon by counsel opposed to the state's views is *Werner* v. *City of Knoxville,* 161 F.Supp. 9. In that case an ordinance of the city of Knoxville was before the court. The pertinent language was "to sell, offer for sale, display for sale, print, distribute or offer for distribution any book, magazine or other publication which prominently features an account of crime, or is obscene, or depicts, by the use of drawings or photographs or printed words, obscene actions and accounts, or the commission or attempted commission of the crimes of arson, assault with a deadly weapon, burglary, kidnapping, mayhem, murder, rape, robbery, theft, or voluntary manslaughter."

The court stated at page 13, "The Ordinance under consideration not only makes unlawful publications which prominently feature crime but also those that give accounts of specific common law crimes like theft, robbery, rape, voluntary manslaughter, etc." The court held that "fairness requires that criminal statutes inform those who are subject to such statutes as to what conduct on their part will render them liable for penalties." And also that the ordinance "includes acts which are included in the constitutional freedoms of the First Amendment * * *." This ordinance did not forbid the sale of publications containing accounts of various crimes to a certain class such as minors or youths below a given age. Again it did forbid the sale of publications containing stories of crimes including those which were neither obscene nor indecent. Such breadth of language included what was permissible and was clearly in conflict with the freedom of the press which is protected by the first amendment to the constitution of the United

States. This language produced for dealers an area of uncertainty wholly absent in the statute under consideration. In *Joseph Burstyn, Inc.* v. *Wilson,* 343 U. S. 495, relied on by defendant, it was held that liberty of expression by means of motion pictures was guaranteed by the first and fourteenth amendments, but the court stated at page 502: "It does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places." The court also said at page 505: "Since the term 'sacrilegious' is the sole standard under attack here, it is not necessary for us to decide, for example, whether a state may censor motion pictures under a clearly drawn statute designed and applied to prevent the showing of obscene films. That is a very different question from the one now before us. We hold only that under the First and Fourteenth Amendments a state may not ban a film on the basis of a censor's conclusion that it is 'sacrilegious.' " The statute now under consideration does not forbid the showing of all motion pictures but it does forbid the exhibition of obscene pictures.

*Kingsley International Pictures Corp.* v. *Regents of the University of New York,* 360 U. S. 684, involved a motion picture portraying adultery under certain circumstances as proper behavior. The court reversed the Court of Appeals of New York and reaffirmed that "motion pictures are within the First and Fourteenth Amendments' basic protection" as held in *Joseph Burstyn, Inc.* v. *Wilson, supra.* In effect the court held that this picture was not obscene.

In *Butler* v. *Michigan,* 352 U. S. 380, a statute of the state of Michigan was involved. A dealer sold to a police officer a book which the trial court characterized as containing obscene, immoral, lewd and lascivious language tending to incite minors to immoral acts. The statute did not limit its prohibition of sales to minors. In reversing the conviction the court held that the legislation was not reasonably restricted to the evil with which it was said to deal,

and that it arbitrarily curtailed a liberty of the individual enshrined in the due process clause of the fourteenth amendment. In the instant statute the restriction on sales is to persons under eighteen years of age.

No publication is labeled obscene and therefore a statute which condemns writings of that nature must use language such as is found in the instant statute, namely, "is devoted to, or is principally made up of * * *." We are of the opinion that the language of the statute under consideration is so clear that "men of common intelligence," to use Mr. Justice Sutherland's expression in *Connally* v. *General Construction Co.*, 269 U. S. 385, can act under it with certainty as to its meaning.

The defendant insists that the statute is unconstitutional because the penalty clause makes it punishable as a misdemeanor or as a felony, and that therefore he is deprived of the equal protection of the law since two people can be tried for the same offense and one convicted of a felony and the other of a misdemeanor. General laws 1956, §11-1-2, reads as follows: "Felony and misdemeanor distinguished.—Unless otherwise provided, any criminal offense which at any given time may be punished by imprisonment for a term of more than one (1) year, or by a fine of more than five hundred dollars ($500), is hereby declared to be a felony; and any criminal offense which may be otherwise punishable is hereby declared to be a misdemeanor."

Since under §11-31-10 a violator thereof may be punished by imprisonment for a term of more than one year the crime defined therein is a felony. The mere fact that in a particular case a defendant may be given a light fine is of no consequence. The crime is still a felony. The character of an offense as a felony or a misdemeanor must be determined by the laws of the jurisdiction where the crime was committed. 14 Am. Jur., Criminal Law, §13, p. 763. And on the same page it is stated, "The sentence

actually imposed in a given case is not, however, the sole criterion as to the grade of the offense committed. Thus, where by statute a crime is declared to be a felony, the fact that the jury in its discretion imposes a fine only does not make the crime a misdemeanor. In a majority of jurisdictions, however, when the court or the jury is given the discretion to fix the punishment for an offense by imprisonment in the penitentiary, fine, or by confinement in jail, such an offense is held to be a felony regardless of the penalty actually imposed."

In *Smith* v. *State*, 145 Me. 313, the court stated at page 326, "It is the punishment that *may* be imposed, not that which is imposed, that determines whether or not an offense is a felony or a misdemeanor. *State* v. *Vashon*, 123 Me. 412."

We are of the opinion that there is no merit in this contention.

The defendant contends that the indictment is fatally defective since it does not contain the name of the book which was sold, and that prosecution thereunder denies to the defendant due process of law. It is sufficient to say as to this contention that the indictment itself is not before the court. Two questions arising from the demurrer to the indictment have been submitted to this court and nothing else. *United States Trust Co.* v. *Tax Assessors*, 47 R. I. 420.

For the reasons stated, our answer to each question as certified is in the negative, and the papers in the case are ordered returned to the superior court for further proceedings.

*J. Joseph Nugent*, Attorney General, *Raymond J. Pettine*, Assistant Attorney General, for State.

*Albert L. Greenberg, John C. Burke, Horace S. Manges*, New York City, for defendant.

*Milton Stanzler, Norman G. Orodenker*, for Rhode Island Affiliate American Civil Liberties Union, Amicus Curiae.